UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 19-10206-RGS

ONYX WHITE

v.

BRIAN AND LUCIA SCHWENK

MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

August 3, 2021

STEARNS, D.J.

Onyx White's surviving claims against corrections officers Brian and Lucia Schwenk, a married couple, include: (1) constitutional violations brought under the Federal Civil Rights Act, 42 U.S.C. § 1983, including a First Amendment retaliation claim; (2) a claim of a private conspiracy to deprive White of his civil rights to petition and to be free from retaliation, 42 U.S.C. § 1985(3); (3) a cause of action under the Massachusetts Declaration of Rights, Mass. Const. art. 26; and (4) a state-law claim for intentional infliction of emotional distress. On April 29, 2021, the Schwenks moved for partial summary judgment. For the following reasons, the court will deny the motion.

The facts viewed in favor of White as the nonmoving party are as follows. On July 9, 2018, Lucia Schwenk, a Lieutenant at Old Colony

Correctional Center (OCCC) (where White was then-incarcerated), ordered White, an African American man, to remove his hands from his pants. When White explained that he was scratching himself, she stated, "you fucking niggers don't listen! But we'll see how tough you are when I tell my husband." White Aff. (Dkt # 76) ¶ 4. Minutes later, Brian Schwenk approached White and threatened to "have [White] hurt and raped by everyone in here for fucking with [Lucia], nigger!" *Id.* ¶ 7. Lucia wrote White up in Disciplinary Report 415170, in response to which White filed grievances alleging the falsity of her account and reporting the Schwenks' racial slurs and threats. White was subsequently threatened and assaulted by inmates affiliated with White Supremacist gangs who informed him that the Schwenks had sent them and that more attacks would follow unless White stopped filing grievances. *Id.* ¶¶ 11-12, 15-16; *see also* Allah Aff. (Dkt # 76-2); Williams Aff (Dkt # 76-3); Stacey Aff. (Dkt # 76-6).

In moving for summary judgment, the Schwenks argue that White did not exhaust his claims in accordance with the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), because he "never filed a grievance setting forth any physical violence he has suffered at the hands of another inmate" or "that the actions of the Schwenks toward him were the product of racial animus." Mot. for Summ. J. (Mot.) (Dkt # 69) at 7-8. Even if White's

2

grievances concerning this matter did not satisfy the PLRA's mandatory exhaustion requirement for the full scope of his claims, courts excuse prisoners where, as here, "prison administrators thwart[ed] inmates from taking advantage of a grievance process through . . . intimidation." *Ross v. Blake*, 136 S. Ct. 1850, 1860 (2016); *see also* Opp'n (Dkt # 74) at 10 n.8 (collecting cases). Whether administrative remedies were available to White is a disputed fact because the crux of White's First Amendment retaliation claim alleges that he faced threats of assault for filing grievances.

Additionally, the Schwenks challenge the sufficiency of White's evidence of a conspiracy to deny his rights based on race, asserting that "the[ir] alleged actions . . . to recruit inmates to assault White are disconnected from the meager suggestion" of racial animus. Mot. at 13. The court disagrees. While the Schwenks' use of racial epithets may alone be insufficient to establish an agreement to violate White's rights, a reasonable inference of a racially motivated conspiracy may be drawn from the use of slurs together with the White Supremacist affiliation of the gangs that the Schwenks allegedly solicited to assault White. *See, e.g.*, Stacey Aff.; White Aff. ¶ 16 (alleging that Brian Schwenk told another inmate that he had a "duty as a white man to protect and defend your race, especially white women, against 'niggers' like Onyx White").

3

With respect to White's alleged violation of the Massachusetts Declaration of Rights, the Schwenks correctly note that this direct cause of action is not permitted if a statutory remedy exists, and that White's claim could have been brought under the Massachusetts Civil Rights Act (MCRA). However, the court will grant White leave to amend to correct this deficiency. Although the court's deadline to amend has passed, White has met Rule 16(b)'s good cause standard, which "focuses on both the conduct of the moving party and the prejudice, if any, to the nonmovant." *Miceli v. JetBlue Airways Corp.*, 914 F.3d 73, 86 (1st Cir. 2019). While White's counsel could in theory have identified the proper vehicle of this claim sooner, White was *pro se* when he initially filed this lawsuit and his counsel sought permission to amend the complaint immediately upon the Schwenks' identification of the issue. More importantly, there is no prejudice to the Schwenks given that an MCRA claim mirrors the Section 1983 claims already asserted in this case.

The Schwenks' final argument merely memorializes the court's dismissal of White's objections to the grievance and disciplinary process, Dkt. # 10, which are distinct from his viable First Amendment retaliation claim.

## **ORDER**

For the foregoing reasons, the court <u>DENIES</u> the Schwenks' Motion for Partial Summary Judgment. The Clerk will schedule a date for trial at a time practicable given the current pandemic.

                SO ORDERED.

                <u>/s/Richard G. Stearns            </u>
                UNITED STATES DISTRICT JUDGE